# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6403 | **DATE** | 3/27/2003 |
| **CASE TITLE** | JOAN E. NEBEL vs. CITY OF BURBANK, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION & ORDER: Defendants' motion to strike [18-1] and dismiss [18-2] portions of the second amended complaint is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | **MAR 2 8 2003** date docketed | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | |
| | Mail AO 450 form. | 03 MAR 27 PM 3:16 | docketing deputy initials |
| | Copy to judge/magistrate judge. | FILED 10 | |
| courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

JOAN E. NEBEL, )
)
Plaintiff, )
) Case No. 01 C 6403
v. )
) Judge Joan B. Gottschall
CITY OF BURBANK, BURBANK MAYOR )
HARRY KLEIN, individually and in his )
official capacity, BURBANK CHIEF OF )
POLICE WILLIAM M. KUJAWA, individually ) **DOCKETED**
and in his official capacity, LIEUTENANT )
WAYNE YOUNG and SERGEANT TIMOTHY ) MAR 2 8 2003
ABBOTT, individually and in their official )
capacities, )
)
Defendants. )

## MEMORANDUM OPINION & ORDER

Plaintiff Joan E. Nebel sued the City of Burbank, Illinois (the "City"), Mayor Harry Klein, Chief of Police William M. Kujawa, Lieutenant Wayne Young, and Sergeant Timothy Abbott for engaging in gender discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and/or 42 U.S.C. § 1983. Nebel sued Klein, Kujawa, Young, and Abbott both individually and in their official capacities. Defendants jointly filed a motion to strike and dismiss portions of Nebel's second amended complaint ("complaint") pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, defendants' motion is granted in part and denied in part.

### Background

Nebel was employed by the City as a police officer from 1989 until her termination on April 10, 2001, and she alleges that while employed as a police officer, she performed to the reasonable

satisfaction of the City at all times. Nebel claims the City and the individual defendants discriminated against her on the basis of her sex (female) by subjecting her to different terms and conditions of employment than male officers. Nebel further alleges, against the City only, that she was subjected to a hostile work environment and retaliated against for opposing gender discrimination.

According to Nebel, "Chief Kujawa and [Nebel's] supervising officers under Chief Kujawa's authority and direction subjected [Nebel] to a continuous course of materially adverse terms and conditions of . . . employment relative to similarly situated male police officers." (Sec. Am. Comp. at ¶14.) For example, beginning in March 1999, Lieutenant Young, Chief Kujawa, and Mayor Klein refused to authorize overtime pay to Nebel to which she believes she was entitled. In June 1999, Chief Kujawa suspended Nebel without pay for writing parking violations under a particular citation section number, yet similarly situated male officers received no discipline for the same conduct. Chief Kujawa also prohibited her from driving a squad car without justification, ordered her to answer telephones at the police station even though no similarly situated male officers were ever assigned phone duty, and unfairly suspended her for failing to log found property. In addition, Sergeant Abbott "subjected [Nebel] to unfounded and discriminatory write-ups, reprimands, and adverse notations to her personnel file" which resulted in her being suspended without pay in June 1999. (*Id.* at ¶ 14(c).) In October 1999, Nebel's "supervising officer [wrongfully] issued a written reprimand to her and Chief Kujawa later [wrongfully] suspended [her] for purportedly failing to respond to a call," even though she was never dispatched to the call. (*Id.* at ¶ 14(f).)

In July 2000, Lieutenant Young and Chief Kujawa initiated disciplinary charges against Nebel, in an effort to get her suspended for twenty-one days; according to Nebel, such disciplinary charges

were not initiated against similarly situated male officers who engaged in the same conduct. Prior to a hearing before the Board of Fire and Police Commissioners ("the Board") regarding these disciplinary charges, "Chief Kujawa encouraged police officer Herbert to lie at the Board hearing if he had to in order to secure [Nebel's] suspension." (*Id.* at ¶ 14(b)). Chief Kujawa again initiated disciplinary action against Nebel in August 2000, "exceeding any discipline levied against similarly situated male police officers . . . ." (*Id.* at ¶ 14(a).)

Nebel "continuously reported and opposed the gender discriminatory harassment and disparate treatment she was experiencing" and opposed the disciplinary charges levied against her. (*Id.* at ¶ 16.) She reported through the chain of command up to Chief Kujawa and through a series of grievances and unfair labor practice complaints. In addition, Nebel filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 19, 2000 (amended September 12, 2000), and on June 22, 2001. Nebel claims that "no action was taken to rectify the discriminatory treatment" she received, and that "the result of [her] reports and opposition to gender discrimination only heightened the discriminatory conduct" she had to endure while employed by the City. (*Id.* at ¶ 16.) For example, "[b]eginning in or around early 1999 through her termination, Chief Kujawa assigned [Nebel] to the most active and demanding beat requiring the most paper work," and Nebel was not rotated between assignments as her male counterparts were. (*Id.* at ¶ 26(a).) In addition, "Chief Kujawa and Mayor Klein maligned and criticized Plaintiff's performance and conduct as a Burbank police officer through various public media in order to demean, degrade, and humiliate [her]." (*Id.* at ¶ 26(c).) Also, "Chief Kujawa and Mayor Klein exerted compelling influence over the Board

and were the effective cause of Nebel's termination from the police force on April 10, 2001." (*Id.* at ¶ 15.)

The United States Department of Justice issued Nebel a Notice of Right to Sue with regard to her first EEOC charge on May 23, 2001. The EEOC issued a Notice of Right to Sue with regard to her second EEOC charge on September 20, 2001. These notices entitled Nebel to bring a civil action within ninety days of her receipt of them. On August 17, 2001, Nebel filed a *pro se* complaint in federal court, which was subsequently amended twice. Defendants then filed a motion to strike and dismiss with prejudice portions of Nebel's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## Analysis

### I. Standard of Review

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under the notice pleading standard of the federal courts, the complaint need only give a "short and plain statement showing that the plaintiff is entitled to relief, the purpose of which is to give the defendant notice of the claims brought against him and the grounds they rest upon." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993)); *see also* Fed. R. Civ. P. 8. Moreover, when evaluating a motion to dismiss under Rule 12(b)(6), courts must accept the well-pled allegations of a complaint as true and construe any ambiguities in favor of the plaintiff. *Thompson*, 300 F.3d at 753.

## II. Motion to Dismiss the Individual Defendants Named in their Official Capacities from Nebel's § 1983 Claims

Counts IV and V of Nebel's second amended complaint bring § 1983 claims against the City[1] and against Chief Kujawa, Mayor Klein, Lieutenant Young, and Sergeant Abbott in their individual and official capacities. But as defendants correctly argue, suing both the City and the individual defendants in their official capacities is redundant. "[S]uits against municipal agents in their official capacities are actually suits against the municipality." *Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 991 (N.D. Ill. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Nebel does not contest this portion of defendants' motion to dismiss. Defendants' motion to dismiss the individual defendants named in their official capacities is therefore granted.

## III. Motion to Dismiss Nebel's Title VII Gender-Based Hostile Work Environment Claim

The City argues that Count II of Nebel's complaint, a Title VII gender-based hostile work environment claim against the City, should be dismissed with prejudice because it is outside the scope of Nebel's EEOC charges.[2] "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule affords "the EEOC and the employer an opportunity to settle the dispute" and warns

---

[1] The parties all agree that the City is a named defendant in count IV and V—a conclusion that is not necessarily clear from the face of the complaint. But even if the City were not named, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[2] The charges of discrimination Nebel filed with the EEOC were not attached to the complaint, but defendants submitted them with their motion to dismiss. Because the EEOC charges are central to Nebel's claim, the court may properly consider them as part of the pleadings. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

the employer of the conduct the employee is challenging. *Id.* But a plaintiff may sue for claims not contained in EEOC charges if the claims are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (internal quotation marks and citation omitted); *see also Harper v. Godfrey, Co.*, 45 F.3d 143, 148 (7th Cir. 1995) (explaining that the *Jenkins* test is met when the current claim is like or reasonably related to the charge and could have reasonably developed from the EEOC's investigation into the charge). EEOC charges must be construed liberally in order to effectuate the remedial purposes of Title VII. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985); *see also Greene v. Term City, Inc.*, 828 F. Supp. 584, 588 (N.D. Ill. 1993) (because laypersons draft their own EEOC charges, courts apply a lenient standard when interpreting the scope of these charges).

Defendants have mistakenly equated Nebel's Title VII gender-based hostile work environment claim with a hostile work environment claim based on conduct of a sexual nature.[3] Nebel claims that the gender discrimination at the Burbank police department created a hostile work environment for women. Gender-based hostile work environment claims need not involve conduct of a sexual nature to be actionable.[4] *See generally Collins v. Vill. of Woodbridge*, 96 F. Supp. 2d 744 (N.D. Ill. 2000).

---

[3] If Nebel were attempting to bring a hostile work environment claim based on misconduct of a sexual nature, defendants would have a strong argument that the complaint is beyond the scope of the EEOC charges. *See Cheek*, 31 F.3d at 501 (recognizing that employers can discriminate based on sex in a variety of ways, and holding that a claim in a complaint is related to an EEOC charge only if it involves the same conduct and implicates the same individuals).

[4] "Sexual harassment is illegal *because and only because* it is a form of gender discrimination under Title VII." *Vandeventer v. Wabash Nat'l Corp.*, 887 F. Supp. 1178, 1180 (N.D. Ind. 1995) (emphasis in original).

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting 42 U.S.C. § 2000e-2(a)(1)) (internal quotation marks omitted). A work environment is hostile "when discriminatory intimidation, ridicule, and insult . . . is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Id.* (citations and internal quotation marks omitted).

The allegations in Count II relating to Chief Kujawa, Lieutenant Young and Sergeant Abbott are within the scope of Nebel's EEOC charges. Claims in a complaint are reasonably related to EEOC charges as long as there is a factual relationship between them. *Cheek*, 31 F.3d at 501. "This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* (emphasis omitted). Although Lieutenant Young and Sergeant Abbott were not mentioned by name in Nebel's EEOC charges, Nebel named the City as a respondent, expressly mentioned Chief Kujawa, and referred to a sergeant and a lieutenant. Thus, it is reasonable to infer that an EEOC investigation would have revealed the names of Lieutenant Young and Sergeant Abbott. Nebel's allegations in paragraph 21(k) of Count II regarding Mayor Klein and Chief Kujawa are outside the scope of her EEOC charges, however. Although Nebel alleges that Chief Kujawa and Mayor Klein maligned and criticized her in the media in order to demean and humiliate her, she mentioned neither Mayor Klein's name nor any media criticism in her EEOC charges. Paragraph 21(k) does not describe the same conduct and implicate the same individuals as the EEOC charges.

In sum, with the exception of paragraph 21(k), all of the allegations of Count II are reasonably related to, or grow out of the allegations of her EEOC charges. Given the remedial nature of Title VII and the leniency with which EEOC charges must be evaluated, defendants' motion to dismiss Count II in its entirety is denied, but paragraph 21(k) is stricken from Count II. Paragraph 21(k) is not stricken from the entire complaint, however, because Nebel incorporated that allegation by reference into her § 1983 claims. The allegation is proper as it relates to those claims because, unlike Title VII claims, litigants need not exhaust administrative remedies before bringing claims under § 1983. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 507 (1982).

### IV. Motion to Strike and Dismiss Paragraphs 6-10 of Nebel's Complaint and Motion to Dismiss Count IV of Nebel's Complaint

Defendants also argue that paragraphs 6, 7, 8, 9, and 10 should be stricken and dismissed with prejudice because Mayor Klein, Chief Kujawa, Lieutenant Young, and Sergeant Abbott are not final policymakers for the City with respect to employment actions in the police department. This argument is inextricably linked to defendants' further contention that Count IV, a § 1983 equal protection claim alleging gender discrimination, fails to state a cause of action establishing municipal liability. Municipalities cannot be held vicariously liable under § 1983 through the doctrine of respondeat superior. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). "[T]he Supreme Court has identified only three contexts in which a municipality ... can be sued under § 1983: 1) for an express policy that causes a constitutional deprivation; 2) for a widespread practice that, although not authorized by written law or express municipal policy, causes a constitutional deprivation and is so permanent and well settled as to constitute a custom and usage with the force of law; or 3) for an

allegation that the constitutional injury was caused by a person with 'final policymaking authority.'" *Comito v. Crowe*, No. 98 C 1250, 1999 WL 168464, at *3 (N.D. Ill. Mar. 18, 1999) (citing *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994) (citing cases)).

Nebel's claims rely on the latter two contexts. She alleges that Mayor Klein, Chief Kujawa, Lieutenant Young and Sergeant Abbot are "the highest ranking final policy-making officials of the City of Burbank" or are "vested with such authority by delegation with respect to establishing Police Department policy, initiating disciplinary action, suspensions, and establishing terms and conditions of employment for . . . police officers . . . ." (Sec. Am. Compl. ¶¶ 6-8.) Nebel further alleges that gender discrimination was "so pervasive and continuous as to constitute a policy and practice of the City . . .," (*id.* at ¶ 36), and that gender discrimination amounts to a municipal policy because such discriminatory acts were perpetrated by the City's final policymakers, (*id.* at ¶ 37).

Ultimately, the outcome of the municipal liability claims will depend on whether any of the individual defendants had final policymaking authority for the City "in a particular area, or on a particular issue." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 (1997); *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 738 (7th Cir. 1999). A motion to dismiss generally is not the proper stage to determine whether defendants actually have such policymaking authority. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000); *Manos v. Caira*, 162 F. Supp. 2d 979, 993 (N.D. Ill. 2001) (denying motion to dismiss and acknowledging that under certain facts, police chief may have final policymaking authority); *Brogan v. Bd. of Educ.*, 152 F. Supp. 2d 1082, 1084 (N.D. Ill. 2001) (plaintiff's allegations must be accepted "as gospel"); *Christopher v. City of Steger*, No. 95 C 593, 1995 WL 290367, at *3 (N.D. Ill. May 11, 1995) (denying motion to dismiss municipal liability

claim based on police sergeant's conduct). Because there is no heightened pleading requirement in § 1983 municipal liability cases, Nebel's conclusory allegations are sufficient to put the defendants on notice of the claims against them and to withstand the motion to strike and dismiss. *McCormick*, 230 F.3d at 324 (citing *Leatherman*, 507 U.S. at 164). Nebel need not plead evidence because the Federal Rules of Civil Procedure "do not permit the courts to dismiss § 1983 municipal liability claims for lack of factual specificity . . . ." *Id.* at 325 (citing *Leatherman*, 507 U.S. at 168-69). Instead, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Id.* (quoting *Leatherman*, 507 U.S. at 168-69) (internal quotation marks omitted).

Defendants argue to the contrary, contending that under Illinois law,[5] final policymaking authority for disciplinary actions within a police department is vested in the Board of Fire and Police Commissioners (the "Board"). *See* 65 ILCS 5/10-2.1-17. Because defendants are not members of that Board, defendants argue, Nebel's allegations naming defendants as final policymakers should be stricken and dismissed as contrary to Illinois law. This argument is flawed. The Board may be the final policymaker under 65 ILCS 5/10-2.1-17 with respect to removal and discharge of police officers, but the statute does not purport to address all matters of police department policy, such as policies establishing the terms and conditions of employment. This argument also ignores Nebel's express allegations that final policymaking authority was delegated to the defendants. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official

---

[5]Identification of policymaking officials is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).

10

who possesses such authority...." *Pembaur*, 475 U.S. at 483. For that matter, policymaking authority can be shared by more than one government official. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125-26 (1988) (recognizing that state law will not always speak with perfect clarity). Further, although it might be tempting to draw a bright line regarding the possible existence of final policymaking authority between, for example, the titles of chief of police and sergeant, to do so might allow a municipal body to "avoid its constitutional responsibilities by delegating, in violation of state law, its responsibilities." *Kujawski*, 183 F.3d at 740 n.4.

Whether Nebel ultimately will be able to prove that any individual defendant(s) had final policymaking authority regarding particular issues, as opposed to authority merely to make certain types of decisions, remains to be seen. *See id.* at 739 (denying summary judgment on municipal liability claim but stressing that plaintiff ultimately must show a delegation of final authority to set policy, not merely delegation of final authority to hire and fire); *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992) (granting summary judgment on municipal liability claim, stating that "[a]uthority to make a final decision need not imply authority to establish rules"). But at this "early stage of litigation," the court cannot rule that Nebel "will be able to prove no set of facts which would entitle her to relief." *Christopher*, 1995 WL 290367, at *3.

To the extent Nebel alleges in Count IV a constitutional injury resulting from a pervasive municipal custom and practice of gender discrimination, as opposed to a constitutional injury caused by a person(s) with final policymaking authority, however, Nebel has failed to state a claim. "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice. The longstanding or widespread nature of a particular

practice would support the inference that policymaking officials 'must have known about it but failed to stop it.'" *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993) (internal quotation marks and citations omitted). As defendants correctly point out, Nebel alleges nothing other than her own personal experiences. Other courts in this district have held that a plaintiff's own isolated experiences are not enough to state a claim for municipal liability under a custom and practice theory. *Wyrick v. City of Chicago*, No. 99 C 4777, 2001 WL 293082, at *2 (N.D. Ill. Mar. 26, 2001) (granting motion to dismiss); *Watson v. Vill. of Glenview*, No. 99 C 6811, 2000 WL 283877, at *3 (N.D. Ill. Mar. 10, 2000) (same). The court agrees with that proposition as a general matter, although it cannot be the law in all cases, regardless of the circumstances. If, for example, Nebel were the only woman on the City police force, it would be unfair to bar her from bringing a custom-and-practice claim simply because she could not point to discrimination other women were forced to endure. Indeed, the fact that there was only one woman on the force could, under some facts, suggest the existence of a custom or policy of gender discrimination. But absent such allegations from Nebel, the court cannot infer that she was the only woman on the force. As a result, Nebel's allegations of her personal experience are an insufficient basis on which to allege a widespread municipal custom and practice of gender discrimination.

Defendants' motion to strike and dismiss paragraphs six through ten and to dismiss Count IV, to the extent that count is based on the conduct of purportedly final policymakers, is therefore denied. However, defendants' motion to dismiss Count IV, to the extent that count is based on a municipal custom-and-practice theory, is granted.

## V. Motion to Strike Lieutenant Young from all Allegations Regarding the Initiation of Charges Against Nebel before the Board of Fire and Police Commissioners

Defendants also argue that Nebel's allegations that Lieutenant Young initiated certain disciplinary charges against her should be stricken. Specifically, defendants ask the court to strike paragraphs 14(b), 21(j), and 26(b) of the second amended complaint, in which Nebel alleges that both Lieutenant Young and Chief Kujawa initiated disciplinary charges against her, seeking her suspension for twenty-one days. Defendants argue those allegations are contrary both to Illinois law and to Nebel's allegation that Chief Kujawa initiated the charges against her with the Board. Neither of these arguments is well-founded.

Regarding the latter argument, Nebel's allegations are not inconsistent—Chief Kujawa and Lieutenant Young could have jointly initiated charges. Moreover, even if the allegations were inconsistent, a plaintiff is allowed to plead in the alternative. *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2001).

Turning to the first argument, according to defendant, "Illinois law vests exclusive authority to bring charges against a police officer seeking suspension for more than five (5) days with the Chief of Police." (Defs.' Mem. Supp. Mot. Dismiss at 7.) The court is not convinced. The Illinois statute, 65 ILCS 5/10-2.1-17, addresses decision-making authority regarding discharges, removals and suspensions from the police force—it says nothing about who may initiate charges (or make policy regarding initiating charges). Although the statute clearly states that a chief of police may, of his or her own accord, suspend department members without pay for five or fewer days, it is far from clear that

13

the statute limits the power to initiate charges seeking suspension to the chief of police.[6] *See* 65 ILCS 5/10-2.1-17. Even if Nebel ultimately is unable to establish municipal liability through the allegations in paragraphs 14(b), 21(j) and 26(b), those allegations are still relevant to establishing Lieutenant Young's individual liability.

Defendants' motion to strike and dismiss the allegations regarding Lieutenant Young in paragraphs 14(b), 21(j), and 26(b) are therefore denied.

### VI. Motion to Dismiss as Time-Barred Nebel's § 1983 Claims Against Lieutenant Young and Sergeant Abbott

Finally, defendants argue that Lieutenant Young and Sergeant Abbott should be dismissed from Counts IV and V on the grounds that Nebel's claims against Young and Abbott under § 1983 are time-barred. The statute of limitations for § 1983 claims filed in Illinois is two years. *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). Expiration of the relevant statute of limitations is an affirmative defense under Rule 8(c). Thus, the absence of time-based allegations in a complaint is not grounds for dismissal. *Brogan v. Bd. of Educ.*, 152 F. Supp. 2d 1084, 1086 (N.D. Ill. 2001). A complaint may be dismissed, however, if it is clear from the face of the complaint that the statute of limitations has run. *Watt v. City of Highland Park*, No. 98 C 8123, 2001 WL 109152, at *3 (N.D. Ill. Sept. 13, 2001). As explained below, Nebel's claims against Young survive, but her claims against Abbott, as currently pled, are dismissed because the only allegation that is not time-barred fails to give

---

[6]Even if the court accepted defendants' statutory construction, it would not strike the allegations. As noted earlier, Nebel alleges that Young had final policymaking authority either expressly or by delegation. *See Pembaur*, 475 U.S. at 483 (authority may be delegated by official possessing authority); *Kujawski*, 183 F.3d at 740 n.4 (municipalities cannot avoid § 1983 liability by unlawfully delegating authority).

Abbott adequate notice of the claims against him.

Nebel filed her original complaint on August 17, 2001. With respect to counts IV and V, which are claims against the individual defendants, the court may consider allegations of wrongdoing against Young and Abbott only if the wrongdoing occurred on or after August 17, 1999.[7] Regarding Abbott, the only allegation that is not clearly time-barred is paragraph 21(b) (realleged in paragraph 26(d)), an allegation against all the individual defendants without differentiation.[8] "While federal notice pleading standards demand little of a § 1983 complaint, each defendant is entitled to notice of the wrongs with which he is charged." *Id.* at *2 (citing *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999)). An allegation like paragraph 21(b), without more, fails to adequately notify Abbott of the nature of his purported wrongdoing. *See id.* at *3. Nebel's claims against Abbott in Counts IV and V are therefore dismissed.

Regarding Young, however, Nebel has alleged a bit more. In addition to the general allegation

---

[7]Nebel's allegations of conduct that occurred outside the two-year limitations period may be considered for purposes of determining the City's Title VII liability for a hostile work environment, however, if at least one act contributing to the allegedly hostile work environment occurred within the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2068 (2002).

[8]Nebel specifically alleges in paragraphs 21(b) and 26(d) that:

Through the respective actions of Sergeant Abbott, Lieutenant Young, Chief Kujawa, and the supervising officers under him, Plaintiff has been continuously and increasingly harassed with heightened discriminatory levels of scrutiny in the completion of her police duties which has led to the insertion of unfounded blemishes, dysfunctional time, and adverse notations in her personnel file, unfavorable, harassing, and unequal assignments and directives, and, ultimately, by accretion of the aforementioned, disciplinary action, including suspension and termination, exceeding any action initiated against similarly situated males and exceeding any discipline levied against similarly situated male police officers whose performance, conduct, and actions had been equal to or at a lesser level than Plaintiff's.

15

against all the individual defendants described above, there is one specific allegation that is not patently time-barred. Nebel alleges that Young discriminated against her when he initiated disciplinary charges against her in July 2000. (Sec. Am. Compl. ¶¶ 14(b), 21(j), and 26(b).) That allegation is sufficient to put Young on notice of Nebel's claims against him. The motion to dismiss Young from counts IV and V is denied.

## Conclusion

Defendants' motion to strike and dismiss is granted in part and denied in part, as explained above.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

Dated: March 27, 2003